# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

(Filed: August 15, 2018)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| NICOLE MULLER on behalf of A.M., | * | UNPUBLISHED |
| a minor child, | * | |
| | * | |
| Petitioner, | * | No. 14-801V |
| | * | |
| v. | * | Chief Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; Reasonable |
| AND HUMAN SERVICES, | * | Basis; Excessive and Duplicative Billing; |
| | * | Administrative Costs; Travel Costs. |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On September 2, 2014, Nicole Muller ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 et seq.,[2] ("Vaccine Act") on behalf of her minor child, A.M., alleging that A.M. suffered from Guillain-Barre Syndrome ("GBS") as a result of her FluMist vaccinations. Petition at 1. Petitioner's petition states that A.M. received two influenza vaccinations, the first on November 1, 2011, and the second on December 28, 2011. Id. A fact hearing was held on November 17, 2016, to determine the precise dates of vaccination. Order dated Nov. 17, 2016 (ECF No. 54).

---

[1] This decision will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet.** As provided by 44 U.S.C. § 300aa-12(d)(4)B), however, the parties may object to the published Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public in its current form. Id.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

1

Subsequently, the undersigned issued a fact ruling on February 27, 2017, finding that A.M. received only one FluMist vaccination on November 1, 2011. Findings of Fact and Conclusions of Law ("Fact Ruling") dated Feb. 27, 2017 (ECF No. 68). On April 27, 2017, petitioner filed a motion to dismiss her petition. Motion to Dismiss dated April 27, 2017 (ECF No. 72). On April 28, 2017, the undersigned issued a decision to dismiss for insufficient proof. Decision dated April 28, 2017 (ECF No. 73).

On November 22, 2017, petitioner filed a motion for attorneys' fees and costs. Petitioner's Motion ("Pet. Mot.") dated November 22, 2017 (ECF No. 79). Petitioner requests attorneys' fees in the amount of $69,349.10 and attorneys' costs in the amount of $6,931.25. Id. at 1-2. Pursuant to General Order 9, petitioner stated that she had not personally incurred any expenses during the course of this claim. Id. at 2. The total request for fees and costs is $76,280.35. Respondent filed her response on December 6, 2017, opposing the motion on the grounds that petitioner's claim lacked reasonable basis. Respondent's Response dated Dec. 6, 2017 (ECF No. 80). Respondent argued that "[w]ithout evidentiary support for the initially alleged second FluMist (and subsequently alleged sole flu shot) administered on December 28, 2011, petitioner cannot establish a reasonable basis for this claim." Id. at 7. Petitioner filed a reply on December 13, 2017, maintaining that reasonable basis existed until the undersigned issued her fact ruling. Petitioner's Reply dated Dec. 13, 2017 (ECF No. 81) at 4.

On June 8, 2018, the undersigned issued a decision granting the motion in part and awarding petitioner a total of $72,244.55. Fee Decision dated June 8, 2018 (ECF No. 85). Respondent then filed a motion for reconsideration on June 25, 2018, disputing the undersigned's determination of reasonable basis. Motion for Reconsideration dated June 25, 2018 (ECF No. 86). Principally, respondent contended that the conduct of petitioner's counsel should not influence the reasonable basis determination. Id. at 3. The undersigned withdrew the original decision on July 3, 2018. Order dated July 3, 2018 (ECF No. 87). Petitioner later filed a response on July 16, 2018. Petitioner's Response dated July 16, 2018 (ECF No. 88).

## I. Discussion

### a. Reasonable Basis

Under the Vaccine Act, a special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(e)(1). When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was reasonable basis for the claim for which the petition was brought." Id. at § 15(e)(3). Here, respondent does not challenge petitioner's good faith. Respondent's Response at 5. Rather, respondent asserts that petitioner's claim had no reasonable evidentiary basis.

"Special masters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 405 (2012). In the interest of preserving this discretion, courts have declined to impose "a reasonable basis test that turns solely on evidentiary standards." Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 287 (2014). Instead, special masters have generally viewed reasonable basis as an "objective consideration determined by the totality of the circumstances."

McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 303 (2011). Incomplete medical records do not prohibit a finding of reasonable basis. Chuisano, 116 Fed. Cl. at 288. Prior to filing, however, the Vaccine Act contemplates "a simple review of available medical records to satisfy the attorneys that the claim is feasible." Silva, 108 Fed. Cl. at 405.

At the time this petition was filed, the available medical records provided sufficient evidentiary support for the claim. As the undersigned documented following one status conference, critical pieces of evidence initially appeared to weigh in petitioner's favor. Order dated Dec. 15, 2016 (ECF No. 60) at 2. First, records from the months following the alleged vaccination seemed to support petitioner's claim. The VAERS report, submitted on October 28, 2012, listed the date of vaccination as December 28, 2011. Petitioner's Exhibit ("Pet. Ex.") 22. Likewise, petitioner reported during A.M.'s emergency room intake on February 28, 2012, that A.M. had received a flu vaccination in December 2011. Pet. Ex. 1 at 16. Such records, the undersigned emphasized, were "more contemporaneous than the affidavits or testimony in this case" and were consistent with petitioner's later claims regarding the date of vaccination. Order dated Dec. 15, 2016 at 2. These claims, made by a petitioner whom the undersigned found credible,[3] warranted the thorough investigation they received during this litigation.

But a finding of reasonable basis does not rest on petitioner's claims alone. Several notations by medical personnel also seemed to corroborate petitioner's version of events. The undersigned found it significant that A.M.'s medical records display a height and weight measurement dated December 28, 2011. Order dated Dec. 15, 2016, at 2; Pet. Ex. 1 at 205. During testimony, witnesses were unable to conclusively resolve this discrepancy. Mr. Stephen Young, the record custodian responsible for the records of AM's pediatrician, testified that based on that particular document, he could not determine whether an actual site visit had occurred that day. Pet. Ex. 16 at 13-14, 16. The "PROVIDER MTL NURSE FLU" notation dated December 1, 2011, presented a similar ambiguity. See Pet. Ex. 15 at 43; Order dated Dec. 15, 2016, at 2. As a nurse at the practice testified during the fact hearing, it suggests that a site visit was at least intended, though it did not display a notation of vaccine administration. Transcript at 63-65. Much like Mr. Young, she admitted that she "had no way to know whether [A.M.] presented to the office on December 1," and she was unable to offer an explanation for the notation. Id. at 64-65.

The Vaccine Program is certainly familiar with cases "in which the petitioner's factual claims vary from the medical records."[4] Hashi v. Sec'y of Health & Human Servs., No. 08-307V, 2016 U.S. Claims LEXIS 1331, at *29 (Fed. Cl. Spec. Mstr. Aug. 25, 2016). Although the fact ruling ultimately resolved the vaccination date question in respondent's favor, this does

---

[3] Although she ultimately determined that the testimony of petitioner and her mother could not "be credited over the contemporaneous record," the undersigned still "found both witnesses credible in that they appeared to be truthful people desiring to provide honest testimony." Fact Ruling at 13.

[4] The special master in Hashi continued: "This actually happens frequently in Vaccine Act cases, and in the large majority of such cases in the past, special masters have found a reasonable basis for contesting such issues at an evidentiary hearing." 2016 U.S. Claims LEXIS 1331, at *29 (emphasis in original).

3

not retroactively negate the reasonable basis that existed at the time. The undersigned thus determines that petitioner's claim had reasonable basis for the period of time covered by petitioner's fee application.

### b. Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorney's fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (2009). A special master need not engaged in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (2011).

### c. Reduction of Billable Hours

#### i. Excessive and Duplicative Entries

The undersigned has previously reduced the fees paid to petitioners due to excessive and duplicative billing. See Ericzon v. Sec'y of Health & Human Servs., No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reducing overall fee award by 10% due to excessive and duplicative billing); Raymo v. Sec'y of Health & Human Servs., No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reducing overall fee award by 20%), mot. for rev. denied, 129 Fed. Cl. 691 (2016). The undersigned and other special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly. See Sabella, 86 Fed. Cl. at 209. Here, billing records filed with the motion for attorneys' fees reflect 50 billing entries[5] notated as "discuss status of case" or as

---

[5] The following is a list of dates reflecting entries that were billed as discussing or emailing internally between attorney and paralegals: December 6, 2013; March 3, 2014; June 11, 2014;

4

internal email correspondence between the attorney and multiple paralegals. The undersigned finds cause to reduce petitioner's fee award for these entries by 50%, **reducing the request for fees in the amount of $447.25.**[6]

### ii. Vague Entries

The undersigned has previously decreased an award of attorneys' fees for vagueness. Mostovoy v. Sec'y of Health & Human Servs., No. 02-10V, 2016 WL 720969 (Fed. Cl. Spec. Mstr. Feb. 4, 2016); Barry v. Sec'y of Health & Human Servs., No. 12-39V, 2016 WL 6835542 (Fed. Cl. Spec. Mstr. Oct. 25, 2016) (reduced fee award by 10% due to vague billing entries). An application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Human Servs., No. 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. June 27, 2009). Petitioners bear the burden of documenting the fees and costs claimed. Id. at *8. The billing entries in this case included Mr. Caldwell and 12 paralegals billing to review the file.[7] Examples of these entries include: March 4, 2013 (0.20 hrs) "Review filed for case direction; update file notes"; August 23, 2013 (0.10 hrs) "Review file for status"; March 3, 2014 (0.20 hrs) "Review file for case status and direction; update personal notes"; January 30, 2015 (0.10 hrs) "Review file for upcoming deadlines"; February 3, 2015 (0.10 hrs) "Review file for upcoming deadlines"; and December 3, 2016 (0.10 hrs) "Review file for status and direction of case." Counsel's vague descriptions do not provide the undersigned sufficient means to effectively evaluate the reasonableness of the time spent and work performed or how the work was relevant to the case. The undersigned shall reduce the total fees for these entries by 50%. This **reduces the request for fees in the amount of $496.35**.[8]

---

September 9, 12, 19, 29, and 30, 2014; October 1 and 9, 2014; November 10, 12, and 24, 2014; December 2, 10, 12, and 30, 2014; January 5, 7, 8, and 19, 2015; February 16 and 18, 2015; April 6, 2015; August 10, 17, 18, 26, and 31, 2015; September 22 and 29, 2015; October 5, 6, and 8, 2015; December 4 and 16, 2015; January 4, 18, and 19, 2016; February 17, 2016; March 30, 2016; April 5, 15, and 25, 2016; June 7, 10, and 30, 2016. Pet. Mot., Ex. 2 at 3-8, 10-16.

[6] This amount consists of: (0.50 hrs * $95 = $47.50) + (2.3 hrs * $135 = $310.50) + (3.7 hrs * $145 = $536.5) = $894.50 – 50% = $447.25.

[7] The following is a list of dates reflecting entries that were billed to review the file in some capacity: November 16, 2012; February 15, 2013; March 4, 2013; June 12 and 13, 2013; August 23, 2013; September 2, 2013; December 6, 2013; February 28, 2014; March 3, 2014; August 22, 2014; October 28, 2014; January 9 and 30, 2015; February 3, 2015; May 8, 2015; September 22, 2015; November 2, 2015, December 3, 2015; February 12, 2016; June 6 and 10, 2016; August 10 and 11, 2016; February 24, 2017; October 26, 2017; and November 14, 2017.

[8] This amount consists of: (0.60 hrs * $95 = $57) + (1.0 hrs * $135 = $135) + (1.10 hrs * $145 = $159.50) + (1.90 hrs * $300 = $570) + (0.20 hrs * $356+ $71.20) = $992.70 – 50% = $496.35.

### iii. Administrative Time

The undersigned finds it reasonable to reduce petitioner's fee award due to an excessive amount of administrative work billed by petitioner's counsel. Mr. Caldwell and his paralegals billed over 6 hours paying invoices, making travel arrangements, and preparing copies and CDs.[9] Examples of these entries include: March 21, 2013 (0.10 hrs) "Fax authorization to medical facility"; November 27, 2013 (0.10 hrs) "Receipt, review, and organize billing records"; August 28, 2014 (0.20 hrs) "Prepare copies of petition and send out for filing"; November 24, 2015 (0.10 hrs) "Review and approve attorney travel expenses"; and January 18, 2016 (0.20 hrs) "Request payment to attorney for travel reimbursement". It is clearly established that secretarial work "should be considered as normal overhead office costs included within the attorneys' fee rates." Rochester v. United States, 18 Cl. Ct. 379, 387 (1989); Dingle v. Sec'y of Health & Human Servs., No. 08-579V, 2014 WL 630473, at *4 (Fed. Cl. Spec. Mstr. Jan. 24, 2014). "[B]illing for clerical and other secretarial work is not permitted in the Vaccine Program." Mostovoy, 2016 WL 720969, at *5 (citing Rochester, 18 Cl. Ct. at 387). As these entries are considered administrative overhead, the undersigned shall **reduce petitioner's request for fees in the amount of $900.20.**[10]

### iv. Travel

In the Vaccine Program, special masters traditionally have compensated time spent traveling when no other work was being performed at one-half an attorney's hourly rate. See Hocraffer v. Sec'y of Health & Human Servs., No. 99-533V, 2011 WL 3705153, at *24 (Fed. Cl. Spec. Mstr. July 25, 2011); Rodriguez v. Sec'y of Health & Human Servs., No. 06-559V, 2009 WL 2568468, at *21 (Fed. Cl. Spec. Mstr. July 27, 2009); English v. Sec'y of Health & Human Servs., No. 01-61V, 2006 WL 3419805, at *12-13 (Fed. Cl. Spec. Mstr. Nov. 9, 2006). However, special masters should not use this rule as standard practice but rather "[e]ach case should be assessed on its own merits." Gruber v. Sec'y of Health & Human Servs., 91 Fed. Cl. 773, 791 (2010). "Even an automatic 50% award may be too high for an undocumented claim, given the possibility that an attorney may use the travel time to work on another matter or not to work at all while traveling." Id.

---

[9] Mr. Caldwell's billing records for both his attorney and paralegals' time contains numerous entries for time that is best characterized as administrative overhead. The following is a list of dates entries for work considered administrative: February 22 and 25, 2013; March 21 and 26, 2013; April 9, 2013; May 6, 8, 13, and 22, 2013; November 26 and 27, 2013; December 3, 2013; January 8, 2014; August 5 and 28, 2014; September 8, 2014; October 3, 7, and 16, 2014; November 10, 2014; September 3, 2015; November 24, 2015; December 17 and 28, 2015; January 4 and 8, 2016; November 14 and 21, 2016; and December 21, 2016. Pet. Mot., Ex. 2 at 2-4, 6, 10-14, 18-19, 21.

[10] This amount consists of: (1.30 hrs * $95 = $123.50) + (0.20 hrs * $105 = $21) + (3.10 hrs * $135 = $418.50) + (0.80 * $145 = $116) + (0.50 * $300 = $150) + (0.20 * $356 = $71.20) = $900.20.

6

Mr. Caldwell's travel charges include 3.9 hours billed on Mary 13, 2013; 3.0 hours billed on December 17, 2015; and 6.50 billed through November 15-17, 2016. These entries include "ground travel to/from airport", "rental car drop off", "baggage claim", and "ground travel to/from hotel". Pet. Mot., Ex. 2 at 2, 12. This travel time was billed at his full hourly rate of $300 per hour for 2013 and 2015 and $356 for 2016. Petitioner will be awarded fees for travel at a reduction of 50% of the attorney's billed rate. This brings Mr. Caldwell's rate for travel to $150 per hour for travel time in 2013 and 2015 and a rate of $178 per hour for travel time in 2016. This **reduces the request for attorneys' fees in the amount of $2,192.00**.[11]

### d. Reasonable Costs

Petitioner requested a total of $6,931.25 in attorneys' costs, including $1,102.07 in costs associated with obtaining medical records and witness fees; $563.06 in shipping, mailing, and private process server fees; and $3,190.49 in costs associated with travel. Pet. Mot., Ex. 3 at 1-4. The undersigned notes that several invoices/receipts were not submitted with petitioner's motion for attorneys' fees and costs. The undersigned issued an order on May 9, 2018 requesting that petitioner submit the missing documentation to support their request for costs. Order dated May 9, 2018 (ECF No. 82). Petitioner's counsel has submitted the requested documentation. Therefore, the undersigned shall award the full amount of costs requested.

## II. Conclusion

Based on all of the above, the undersigned finds that petitioner is entitled to the following award of reasonable attorneys' fees and costs:

| | |
|---|---|
| Attorney fees requested: | $69,349.10 |
| Reduction due to excessive entries: | -   447.25 |
| Reduction due to vague entries: | -   496.35 |
| Reduction for administrative time: | -   900.20 |
| Reduction for travel time: | - 2,192.00 |
| **Attorney Fees Awarded** | **$65,313.30** |
| | |
| Attorney costs requested: | $6,931.25 |
| **Attorney Costs Awarded** | **$6,931.25** |
| | |
| **Total Attorneys' Fees and Costs Awarded** | **$72,244.55** |

The undersigned hereby awards the amount of **$72,244.55**, in the form of a check[12] made payable jointly to petitioner and petitioner's counsel, Franklin J. Caldwell, Esq.

---

[11] This amount consists of: (6.90 hrs * $300 = $2,070.00) + (6.50 hrs * $356 = $2,314.00) = $4,384.00 – 50% = $2,192.00.

[12] The check shall be forwarded to Maglio Christopher & Toale, PA, 1605 Main Street, Suite 710, Sarasota, Florida 34236.

The clerk of the court shall enter judgment in accordance herewith.[13]

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.